COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Bray and Clements
Argued at Alexandria, Virginia


HECTOR QUINONES

                                               OPINION BY
v.    Record No. 3052-99-4        JUDGE JERE M. H. WILLIS, JR.
                                               JUNE 19, 2001
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                       J. Peyton Farmer, Judge

            William E. Hassan (Duvall, Harrigan, Hale &
            Hassan, P.L.C., on briefs), for appellant.

            Robert H. Anderson, III, Senior Assistant
            Attorney General (Mark L. Earley, Attorney
            General, on brief), for appellee.


    Hector Quinones (appellant) was convicted by a jury of

aggravated sexual battery, in violation of Code § 18.2-67.3, and

of taking indecent liberties with a minor over whom he

maintained a custodial or supervisory relationship, in violation

of Code § 18.2-370.1.[1]  On appeal, he contends that the trial

court erred (1) in allowing the Commonwealth to introduce

_____

    [1] The original charge against Quinones cited Code
§ 18.2-370.1.  The specification of the charge tracked the
language of that statute.  However, the indictment and the
original trial order both cited Code § 18.2-371.  By order
entered May 9, 2001, the trial court identified this disparity
as a clerical error, affirming that the correct citation was to
Code § 18.2-370.1 and that Quinones' conviction was pursuant to
that statute.  This disparity, being corrected as a clerical
error, is not ground for dismissal of the indictment or for
reversal of Quinones' conviction.  See Rule 3A:6(a).

evidence of other sexual misconduct, (2) in admitting evidence that he possessed pornographic videotapes, and (3) in failing to conduct an evidentiary hearing based on alleged after-discovered evidence and juror misconduct. Because the trial court erred in admitting evidence of Quinones' prior bad acts, we reverse the judgment of the trial court and remand the case for retrial, if the Commonwealth be so advised. We do not address Quinones' third assignment of error.

## I. BACKGROUND

On Wednesday, June 17, 1998, the victim, who was then seven years old, went to visit Quinones, her step-grandfather, at his home. She planned to accompany him to a bingo game on Thursday night and to return to her home on Friday. After the victim returned home, she developed a rash, which turned out to be scarlet fever and unrelated to the charges on appeal. Responding to her mother's questions about what may have caused the rash, the victim told her mother that Quinones had rubbed lotion all over her body, including her private parts. Quinones was arrested and charged with inanimate object penetration, aggravated sexual battery, and taking indecent liberties with a minor.

The victim testified that when she and Quinones returned home from the bingo game, she put on a night shirt, pants, and panties. She testified that Quinones told her to remove her clothes so that he could wash and dry them and to lie on the

-

couch. She removed "everything," although she was "embarrassed" because she had never before done so in Quinones' presence. She testified that Quinones removed his own clothes and put baby lotion "[e]verywhere" on her body. Specifically, she stated that he rubbed the lotion on her stomach, back, chest, and "private parts." She testified that as Quinones did this, he said, "[d]on't tell anybody else." She estimated that the incident lasted "a few minutes." She then put on her laundered clothing and fell asleep with Quinones.

The Commonwealth called as a witness Christine Brooks, Quinones' daughter. Over objection, Ms. Brooks testified that, during her childhood, her parents were separated and she visited Quinones' home a "couple times a year." She stated that on one occasion, when she was five years old, Quinones asked her to "touch" or "taste" his penis. She said Quinones told her "not to say anything" to anyone. She reported the incident to no one until about ten years later, when she told a school friend. She stated that when she learned of the accusation in this case, she decided to come forward. The trial court instructed the jury that it could consider Ms. Brooks' testimony only in determining Quinones' intent in applying the lotion to the victim.

Quinones told a different story. He testified that, when he picked up the victim, her mother told him that she had packed two sets of clothes for the victim and some ointment for bug bites. He said that he and the victim returned from the bingo

-

game about 11:00 p.m. and watched television until about 1:00 a.m. He said that the victim could not fall asleep because his home was "very hot." He said he told the victim to remove her "wet" clothes so he could put them in the washer and dryer. He admitted that he was aware that the victim had two clean outfits. He acknowledged that, at this point, he was wearing only his boxer shorts and the victim was naked. He testified that he then applied a dry skin lotion "[a]ll over [the victim's] body where [he] thought she was having that problem with the itching." Although denying that he had put any lotion on the victim's genital area, he admitted that he had applied the lotion to her buttocks, back, legs, arms, "everywhere." According to Quinones, the victim then fell asleep.

Quinones denied deriving sexual gratification from applying the lotion to the victim. He testified that he was diabetic and that his medication rendered him impotent. He stated that, due to his condition, he had no sex life and no sexual interest.

On rebuttal, Detective George Bond testified that during a search of Quinones' home, he seized five videotapes from an entertainment center near the television. The tapes were not entered into evidence, nor were they described specifically to the jury. However, over objection, Detective Bond testified that the videotapes were "pornographic . . . X-rated . . . hardcore porno." The record does not disclose that the victim ever saw the tapes, that the tapes involved children, that the

-

tapes involved conduct similar to the conduct of which Quinones was accused, or that the tapes played any part in inspiring, inciting, or encouraging Quinones' alleged misconduct.

In surrebuttal, Quinones testified that two of the tapes belonged to his son and a third to a friend.  According to Quinones, he last watched the tapes in 1992 or 1993.

The jury found Quinones guilty of aggravated sexual battery and of taking indecent liberties with a minor, but acquitted him of inanimate object penetration.  Quinones moved the court post-trial to set aside the verdict and to enter a judgment of acquittal, or, in the alternative, to grant him a new trial.  Quinones based this motion (1) upon the admission into evidence of Ms. Brooks' testimony and the testimony concerning the seized videotapes and (2) upon after-discovered evidence which he claimed disclosed jury improprieties and coaching of the victim's testimony.  The trial court denied an evidentiary hearing on the after-discovered evidence and denied Quinones' motion.

## I.  ADMISSIBILITY OF EVIDENCE

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling [on admissibility] will not be disturbed on appeal in the absence of an abuse of discretion.'"  Bottoms v. Commonwealth, 22 Va. App. 378, 384, 470 S.E.2d 153, 156 (1996) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).  "Evidence is relevant

-

if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993).

## A.  MS. BROOKS' TESTIMONY

Generally, "[e]vidence of other independent acts of an accused is inadmissible if relevant only to show a probability that the accused committed the crime for which he is on trial because he is a person of bad or criminal character." Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985).  However, such evidence is admissible when it is "relevant to an issue or element in the present case."  Id. "[I]f such evidence tends to prove any of the relevant facts of the offense charged and is otherwise admissible, it will not be excluded merely because it also shows [the accused] to be guilty of another crime." Williams v. Commonwealth, 203 Va. 837, 841, 127 S.E.2d 423, 426 (1962).  Accordingly, evidence of prior bad acts may be properly admitted:

> (1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a modus operandi; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part.

-

Lockhart v. Commonwealth, 18 Va. App. 254, 259, 443 S.E.2d 428, 429 (1994). "With respect to these exceptions, the test is whether 'the legitimate probative value outweighs the incidental prejudice to the accused.'" Hawks v. Commonwealth, 228 Va. 244, 247, 321 S.E.2d 650, 652 (1984) (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 897 (1983)).

Quinones contends that Ms. Brooks' testimony was inadmissible because it was evidence merely of a prior bad act and was highly prejudicial to him. The Commonwealth argues that the testimony was relevant because the prior bad act and the crimes charged were similar and because proof of Quinones' prior conduct served to prove his intent.

The crimes of which Quinones was convicted required proof beyond a reasonable doubt that he applied the lotion to the victim with "the intent to sexually molest, arouse, or gratify any person," Code § 18.2-67.10(6), or with "lascivious intent," Code § 18.2-370.1, which is "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." McKeon v. Commonwealth, 211 Va. 24, 27, 175 S.E.2d 282, 284 (1970). Quinones denied such intent and testified that he applied the lotion only to relieve the victim of the "problem with [her] itching."

The incident described by Ms. Brooks was remote in time from the incident on trial, the two events being separated by approximately twenty years. While each incident involved sexual

-

misconduct concerning a child, the precise conduct described by Ms. Brooks was different from the conduct charged to Quinones in this case. Proof of the event described by Ms. Brooks had negligible probative value in the determination whether Quinones committed the act of which he was accused and, if so, whether he did so for sexual gratification or with lascivious intent. Indeed, Ms. Brooks' testimony merely suggested that Quinones might harbor salacious interests and a predisposition for sexual abuse of children. Her testimony neither established guilty knowledge on Quinones' part nor proved his motive to commit the crimes charged. It did not negate good faith, mistake or accident on his part. It did not address the relationship between Quinones and the victim or their feelings toward each other. It addressed neither opportunity nor the identity of the perpetrator of the crimes charged. It did not demonstrate that the crimes charged were part of a common scheme or plan including the events described by Ms. Brooks. In short, the testimony was not relevant to the charges on trial. At the same time, the incident described by Ms. Brooks was so shockingly reprehensible as to be intensely prejudicial to Quinones in the trial of this case.

In <u>Guill v. Commonwealth</u>, 255 Va. 134, 495 S.E.2d 489 (1998), the Supreme Court confronted the issue presented in this case. In <u>Guill</u>, the Supreme Court held that the defendant's 1985 breaking and entering and attempt to commit rape was

-

unrelated to a 1995 charge of breaking and entering with the intent to rape.[2]  Because "there was no causal relation or logical connection between the 1985 offense and the crime charged," the Supreme Court held that "evidence of the 1985 crime was not probative evidence of the defendant's intent in the crime charged" and was therefore "irrelevant and inadmissible for purposes of proving that intent."  Id. at 140, 495 S.E.2d at 492-93.

In the instant case, the evidence suggested no causal relationship or logical connection between the incident described by Ms. Brooks and the crimes on trial.  Thus, introduction of Ms. Brooks' testimony was irrelevant on the issue of Quinones' intent and was an impermissible use of prior bad acts evidence.  The trial court erred in admitting that testimony.

---

[2] In Guill, the Commonwealth introduced evidence of a 1985 burglary and attempted rape which it argued was sufficiently similar to the charged burglary to show the defendant's intent was to rape.  See Guill, 255 Va. 134, 495 S.E.2d 489.  The trial court found the circumstances of the prior crime sufficiently similar to the charged offense and admitted the evidence.  The Supreme Court reversed, noting several factual differences and holding that "evidence of the 1985 crime was inadmissible . . . because that offense was not idiosyncratic in relation to the facts of the present offense.  As such, the evidence lacked a logical relationship to the offenses charged and, thus, was irrelevant and showed only the defendant's propensity to commit the crime charged."  Id. at 141, 495 S.E.2d at 493.

-

B.  VIDEOTAPES AND TESTIMONY ABOUT THEIR CONTENTS

Quinones also contends that the trial court erroneously admitted into evidence the characterization of the videotapes that were seized from his home.  He argues that this evidence was irrelevant, immaterial and prejudicial.  For the reasons governing our decision concerning Ms. Brooks' testimony, we agree.

The record contains no evidence establishing a relationship between the videotapes and the charges on trial.  No evidence discloses that the videotapes displayed acts involving the victim or acts similar to the acts Quinones allegedly performed on the victim.  No evidence discloses that the tapes were ever shown to the victim or that she was aware of their existence.  No evidence suggests that the videotapes played any part in the event described by the victim or that they influenced in any way Quinones' attitude and conduct toward the victim.  On the other hand, reference to, and characterization of, the tapes was highly prejudicial to Quinones.

The trial court erred in admitting into evidence reference to, and characterization of, the videotapes.

### III.  AFTER-DISCOVERED EVIDENCE

After trial, but before sentencing, Quinones submitted to the trial court two affidavits asserting that a trial juror had answered falsely on voir dire and had communicated with a witness during trial and that a social worker had coached the

-

victim during her testimony.  The trial court erred in refusing to investigate those allegations, which if true, called into question the integrity of the trial.  Because we reverse and remand on issues substantive to the trial, and because it is unlikely that these procedural issues will develop upon retrial, we deem it unnecessary to address them further in this opinion.

The judgment of the trial court is reversed and this case is remanded for retrial, if the Commonwealth be so advised.

<u>Reversed and remanded.</u>