COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


ROGER KEITH HOLCOMB

                                                    MEMORANDUM OPINION* BY
v.        Record No. 3018-04-3                      JUDGE SAM W. COLEMAN III
                                                          JUNE 20, 2006
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF GILES COUNTY
                              Colin R. Gibb, Judge

          Thomas L. DeBusk for appellant.

          John H. McLees, Senior Assistant Attorney General (Judith Williams
          Jagdmann, Attorney General, on brief), for appellee.


        Roger Keith Holcomb was convicted following a jury trial of two counts of aggravated

sexual battery and one count of taking indecent liberties with L.A., a seven-year-old child.  At the

same trial, Holcomb was acquitted of several similar charges involving three other juveniles.  On

appeal, Holcomb contends the trial court erred by (1) denying his motion to suppress certain

statements he made and (2) refusing to admit evidence that one of the complaining witnesses

other than L.A. "previously exhibited inappropriate sexual behaviors and made [false] reports of

sexual assault [by others] to gain attention . . . ."  For the reasons that follow, we disagree and

affirm the trial court's decision.

                                        BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting <u>Martin v. Commonwealth</u>, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence proved Holcomb was the pastor at the church L.A.'s family attended. On September 3, 2003, Holcomb drove L.A. home from school. They arrived at the residence around 5:00 p.m., and Holcomb stayed at the house until approximately 10:00 p.m. While Holcomb was there, L.A.'s mother received a telephone call from social worker Sherri Thwaites informing her that L.A. had complained of sexual contact by Holcomb. Based on the call, L.A.'s parents became angry with Holcomb and ordered him not to leave. Holcomb's son and daughter-in-law arrived at the house, and L.A.'s mother engaged in a heated argument with Holcomb's daughter-in-law. Deputy Sheriff Eric Thwaites arrived a short time later and parked outside the house. Soon after, other officers arrived on the scene. Deputy Thwaites approached Holcomb and asked if he wanted to leave. Holcomb replied he did not. Investigator Mark Gordon spoke with L.A.'s parents and then asked to speak with Holcomb. Holcomb agreed to talk to Investigator Gordon and accompanied Deputy Thwaites to the police station. Holcomb rode in the front seat of Thwaites' cruiser, was not handcuffed, and was not told he was under arrest.

Once at the station, Holcomb followed Deputy Thwaites into the building. Holcomb did not ask to leave and was not told he could not leave. Investigator Gordon interviewed Holcomb in the presence of social worker Sherri Thwaites. The interview began at approximately 10:15 p.m. and ended at approximately 1:30 a.m. Gordon advised Holcomb of his <u>Miranda</u> rights at the beginning of the interview, and Holcomb agreed to speak with the investigator. During the interview, after being advised that he was accused of sexually abusing L.A., Holcomb admitted that on various occasions L.A. slept in the same bed with him and that she once saw his partially exposed penis.

When Gordon informed Holcomb that L.A. stated Holcomb had exposed his penis to her and made her put her hand on it, Holcomb replied, "This is as far as it goes." Moments later he said, "Get me a lawyer." Gordon told Holcomb he was entitled to an attorney but stated "I can't continue the conversation unless you are willing to . . . ." Holcomb agreed to continue talking and asked to speak with Sherri Thwaites alone. Thereafter, Holcomb discussed with the social worker the fact that he had contact with L.A. At the end of the interview, Sherri Thwaites gave Holcomb the name of a counselor. Thereafter, Investigator Gordon drove Holcomb back to L.A.'s residence to retrieve his vehicle. Holcomb left by himself and was not arrested until the following day.

Appellant was charged and tried on multiple counts of sexual battery and taking indecent liberties with a child involving L.A. and three other complaining witnesses, C.W., D.W., and M.C. At trial, L.A. testified as to several occasions on which she slept in the same bed with Holcomb and she described certain sexual acts which Holcomb committed against her. The other complaining witnesses testified about sexual acts that Holcomb allegedly perpetrated against them. Gordon testified however that it was only after L.A. had complained of Holcomb's sexual activity against her that the other children reported that Holcomb had engaged in sexual behavior with them.

Holcomb sought to introduce evidence that D.W., two years prior to the charged incidents, had engaged in sexually provocative behavior in order to gain attention for herself. He also tried to introduce evidence concerning previous sexual behavior of K.H., another juvenile who knew the other children but who was not a complaining witness in this case. Holcomb proffered this evidence in order to demonstrate that all the victims, including L.A., had motives to fabricate the complaints against Holcomb. The proffered evidence also included testimony from a social worker, Rebecca Hughes, who had evaluated K.H. three years earlier. Based upon

K.H.'s provocative and erotic behavior, Hughes concluded K.H. had been sexually abused and needed treatment. In a separate investigation, Hughes concluded that D.W. had been "exposed to sexually stimulating behavior" and was using her knowledge of sexual activity to gain attention for herself. Another social worker concluded D.W. and her sister C.W. had been victims of sexual abuse by an unknown abuser. Holcomb argued that this evidence was admissible because it demonstrated a motive for D.W. to fabricate the charges against him in order to gain attention for herself. The court refused to admit the evidence, finding that it was not only "too tenuous," but also "not evidence of prior false accusations."

The other complaining witnesses testified regarding an incident in which the three of them spent the night at Holcomb's house. The events they described were separate and apart from the events to which L.A. testified. The jury acquitted Holcomb of the charges by the three juveniles other than L.A.

ANALYSIS

I.

The burden to establish that the denial of a motion to suppress constituted reversible error rests with the defendant. See Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993). "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, we review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case. See Ornelas, 517 U.S. at 699; Hayes v. Commonwealth, 29 Va. App.

647, 652, 514 S.E.2d 357, 359 (1999); Shears v. Commonwealth, 23 Va. App. 394, 398, 477

S.E.2d 309, 311 (1996).

Holcomb asserts he was subjected to a custodial interrogation, that he invoked his right to

counsel, and that the police improperly continued to question him following that invocation.

Thus, he argues, any statements he made to Investigator Gordon or Sherri Thwaites were

inadmissible and should have been suppressed.

"'[P]olice officers are not required to administer Miranda warnings to everyone whom

they question,' and Miranda warnings are not required when the interviewee's freedom has not

been so restricted as to render him or her 'in custody.'" Harris v. Commonwealth, 27 Va. App.

554, 564, 500 S.E.2d 257, 261-62 (1998) (quoting Oregon v. Mathiason, 429 U.S. 492, 495

(1977)). "The totality of circumstances must be considered in determining whether the suspect is

in custody when questioned . . . ." Wass v. Commonwealth, 5 Va. App. 27, 32, 359 S.E.2d 836,

839 (1987).

> The circumstances may include factors such as the familiarity or neutrality of the surroundings, the number of officers present, the degree of physical restraint, the duration and character of the interrogation, the presence of probable cause to arrest, and whether the suspect has become the focus of the investigation.

Cherry v. Commonwealth, 14 Va. App. 135, 140, 415 S.E.2d 242, 245 (1992). The nature of the

custody as articulated in Miranda and its progeny, is whether there is a "'formal arrest or

restraint on freedom of movement' of the degree associated with a formal arrest." Burket v.

Commonwealth, 248 Va. 596, 605, 450 S.E.2d 124, 129 (1994) (quoting California v. Beheler,

463 U.S. 1121, 1125 (1983)). No single factor alone will necessarily establish custody for

Miranda purposes, and not all factors may be relevant in a given case. Wass, 5 Va. App. at 33,

359 S.E.2d at 839. Thus, our inquiry is whether, based on "all of the circumstances," a

reasonable person in Holcomb's position would have understood that he was under arrest.  See Cherry, 14 Va. App. at 140, 415 S.E.2d at 244-45.

We hold that Holcomb failed to demonstrate he was arrested or that his freedom of action was curtailed to an extent associated with an arrest at the time he said, "Get me a lawyer."[1]

The fact that Holcomb was read his Miranda rights and informed of his Fifth Amendment right to counsel is a circumstance, along with all others, to be considered in our determining whether Holcomb was subjected to a custodial interrogation.  See Wass, 5 Va. App. at 32-33, 359 S.E.2d at 839; United States v. Owens, 431 F.2d 349, 352 (5th Cir. 1970).  See generally Harris, 27 Va. App. at 565, 500 S.E.2d at 262.  However, during the encounter with the police, Holcomb was never told he was under arrest, he agreed to accompany the officers to the police station, he rode in the front seat of the police cruiser, he was not handcuffed, he was offered a bathroom break and refreshments at the police station, and he was interviewed by only one police officer.  Holcomb was not threatened or coerced during the interview, he was informed that he was free to leave the station that night, and he was released after the interview.  The police drove Holcomb back to L.A.'s house to retrieve his vehicle and belongings, and he was permitted to drive himself home from there.  Although Holcomb was aware he was the subject of the investigation into L.A.'s complaints, his freedom was at no time restricted to the degree associated with a formal arrest.  Accordingly, we find that Holcomb was not in custody during the interview and we find no error in the trial court's denial of Holcomb's motion to suppress his statement to the police.

---

[1] Holcomb does not argue that because he was advised of the Miranda warnings before he attempted to request counsel he was necessarily in custody.  Nevertheless, we note that the right to an attorney does not apply when invoked during non-custodial interrogation.  See Tipton v. Commonwealth, 18 Va. App. 832, 834-35, 447 S.E.2d 539, 540 (1994).

II.

Holcomb argues the trial court erred by refusing to admit evidence that D.W. "previously made reports of sexually stimulating behavior to gain attention to show that she and other complaining witnesses had a similar motive to fabricate this charge." He asserts the proffered evidence was admissible under the Rape Shield statute, Code § 18.2-67.7(B).

In pertinent part, that subsection provides that "[n]othing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused." Code § 18.2-67.7(B).

Holcomb emphasizes on brief that the evidence he sought to introduce "was not evidence regarding [D.W.'s] sexual conduct. It was evidence regarding her propensity to lie about such conduct. The very nature of this evidence is that it was not about actual prior sexual conduct, but fictitious episodes of sexual conduct."

"Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted." Harrell v. Woodson, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987). See also Quinones v. Commonwealth, 35 Va. App. 634, 639, 547 S.E.2d 524, 527 (2001) (holding that "[e]vidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case").

Holcomb asserts the evidence demonstrated D.W.'s propensity to lie. He further urges the fact that D.W. may have had a tendency to lie about her sexual conduct demonstrated that the other victim-witnesses may have been motivated to fabricate the charges against him. However, the proffered evidence only showed that D.W. had previously been exposed to sexual conduct, that a social worker believed D.W. had been abused in the past, and that D.W. engaged in sexually provocative conduct in order to gain attention, not that she made any false reports of sexual abuse or that she had any motive to make up the charges against Holcomb. The evidence

- 7 -

had no relevance to the allegations pertaining to L.A.  Additionally, the evidence involved conduct over two years prior to the matters at issue before the jury and in no way supported Holcomb's contention that all the girls were motivated to make false reports against him.  The evidence Holcomb sought to introduce simply does not tend to prove a pertinent matter in issue, and that is particularly so in regard to the charges involving L.A.  We find no error in the trial court's conclusion that the proffered evidence was irrelevant, "too tenuous" and, therefore, inadmissible.

Accordingly, the decision of the trial court is affirmed.

<u>Affirmed.</u>