COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judges Malveaux and Raphael
Argued by videoconference


MICHAEL NSE EYO EBONG

MEMORANDUM OPINION* BY
v.        Record No. 1617-23-1          CHIEF JUDGE MARLA GRAFF DECKER
                                        JANUARY 28, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Tasha D. Scott, Judge[1]

(B. Thomas Reed, on brief), for appellant.  Appellant submitting on
brief.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Michael Nse Eyo Ebong appeals his convictions for rape through incapacity, object

sexual penetration, and two counts of involuntary manslaughter.  At trial, the Commonwealth

alleged that on three different nights, Ebong met a woman at a bar, took her to his apartment, and

sexually assaulted her.  Two of the three women died from drug overdoses.  The third awoke but

was heavily drugged.  On appeal, Ebong challenges the joinder of the charges involving the

different women into a single trial, arguing that the Commonwealth did not show a common

scheme as required by Rules 3A:6(b) and 3A:10(c).  We hold that the trial court did not abuse its

discretion in granting the Commonwealth's motion for joinder.  Ebong also contends that the

evidence was insufficient to support his convictions, suggesting that the Commonwealth did not

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Scott presided over Ebong's jury trial and sentencing.  Judge Everett A. Martin,
Jr., granted the Commonwealth's motion for joinder.

prove that he drugged the victims. For the following reasons, we reject this argument. Consequently, we affirm the trial court's judgment.

BACKGROUND[2]

On three separate occasions, Ebong met three different women at a bar in Virginia Beach. He took each woman to his apartment and had sex with her. Two of the women, Sheena and Kelsey, died in Ebong's apartment from drug overdoses.[3] The third woman, Jennifer, woke in his apartment drugged and unable to fight off his sexual assaults. Chronologically, Sheena died in November 2020. Six months later, Ebong sexually assaulted Jennifer. Less than two months after Ebong's encounter with Jennifer, Kelsey died in his apartment.

A grand jury charged Ebong with felony homicide of Sheena and Kelsey. It also charged him with rape through incapacity and object sexual penetration of Jennifer.

The Commonwealth filed a pre-trial motion asking the trial court to join charges involving the three women for a single trial, based on the theory that the crimes were part of a common scheme. The court granted the motion. In doing so, the court summarized the Commonwealth's theory of the case: "[Ebong] met the women at bars . . . on three separate occasions; . . . he drugged their drinks; he took them to his home; and he sexually assaulted them after the drugs rendered them helpless or unconscious." The court noted that "[f]inding a dead woman in a man's apartment is unusual" but "[f]inding two dead women in the same man's apartment within eight months is astonishing." Based on this theory of the case, the court concluded that the "alleged conduct . . . constitute[d] a common scheme." The court additionally

---

[2] "We consider the evidence in the light most favorable to the prevailing party, the Commonwealth." *Severance v. Commonwealth*, 67 Va. App. 629, 635 (2017), *aff'd*, 295 Va. 564 (2018).

[3] For privacy purposes, this memorandum opinion refers to the victims only by their given names.

reasoned that justice did not require separate trials because the evidence of each instance would be admissible evidence if the trials were held separately.

The jury trial spanned five days. The Commonwealth presented evidence of the crimes relating to the three victims. Evidence included Ebong's statements to police, forensic testimony and analyses, and testimony from the only living victim—Jennifer.

Sheena met Ebong at a bar the night of November 14, 2020. The next morning, Ebong called 911, and the first responders found Sheena dead in his apartment. An analysis of her blood showed alcohol, morphine, fentanyl, and cocaine in her system.

Kelsey met Ebong at a bar the night of July 10, 2021. The next day, Ebong called 911 and first responders found Kelsey dead in his apartment. An analysis of her blood showed alcohol, morphine, and fentanyl in her system. The morning of Kelsey's death, a detective found a clear plastic bag of cocaine in Ebong's apartment.

Jennifer met Ebong at a bar on May 22, 2021. The next day, she regained consciousness in his apartment. Jennifer did not know how she got there or even remember meeting Ebong. Ebong told her they had met at the bar the previous night and that he gave her his drink. Jennifer felt drugged even though, to her knowledge, she had taken no substances other than alcohol. She was in and out of consciousness and could not move, speak, or see clearly. Jennifer was vomiting profusely and shaking. Regardless of Jennifer's physical state, Ebong penetrated her vagina with his fingers and penis without her consent. At various points in the day, Ebong gave Jennifer water to drink. According to her, the water tasted bad but at the time she thought it was because she had vomited.

After being in Ebong's apartment the whole day, Jennifer finally managed to get dressed and collect her purse and phone. She told Ebong she needed to go home. He helped her to his car and dropped her off near her house. As she walked the remaining short distance home,

- 3 -

Jennifer fell several times because her body was not functioning properly. She continued to feel unwell and went for a medical evaluation about three days later. Jennifer did not have a toxicology analysis done. About two months later, Jennifer contacted the police.[4]

During the ensuing law enforcement investigation, which included a search of Ebong's phone, the police discovered nude and partially nude photographs of both Kelsey and Jennifer taken while they were unconscious. Two of those photographs showed Ebong touching their buttocks.

At trial, a forensic expert testified about the effects of alcohol and the various drugs found in the two deceased victims' systems. The expert explained that alcohol, morphine, and fentanyl are central nervous system depressants, while cocaine has "stimulant properties" followed by a "crash phase." She expounded that especially when combined at high concentrations, such central nervous system depressants "can render someone . . . in [a] state of stupor," meaning that person is "largely unresponsive" and may lose consciousness. The medical examiner testified that typically drug users "snort[]" drugs but sometimes inject or ingest them. She also stated that it was impossible to determine from an autopsy whether the fatal drugs "were self-administered or administered by another" person.

After the close of the evidence, Ebong made a motion to strike, which the trial court denied.

Defense counsel asked the court to instruct the jury on involuntary manslaughter as a possible alternative to second-degree murder. Counsel contended that the evidence supported that instruction because the argument "could be" made that Ebong failed in a legal duty to "render aid in a timely manner and that" failure "contributed to the death[s]" of Sheena and

_____

[4] Jennifer did not report the assault to the police at first. She did not think that she had "enough information" since she did not know Ebong's name or where his apartment was. After she saw a social media post about Kelsey's death, she contacted the authorities.

- 4 -

Kelsey. Over the Commonwealth's objection, the court gave the instruction as requested by the defense, telling the jury that if it found Ebong not guilty of felony homicide, a type of second-degree murder, it could find him guilty of involuntary manslaughter.[5]

During closing argument, the Commonwealth asked the jury to find Ebong guilty of second-degree murder under the theory of felony homicide. The prosecutor reasoned that the evidence of drugs found in the two deceased victims' systems and Jennifer's testimony established that Ebong gave the three women controlled substances to incapacitate them. The Commonwealth further argued that Ebong's drug distribution constituted the underlying felony necessary for felony homicide convictions.

Defense counsel asked the jury to acquit Ebong of all the charges. The defense argued that the jury should find Ebong not guilty of murder because the evidence did not prove beyond a reasonable doubt that he gave drugs to either Sheena or Kelsey. Nevertheless, defense counsel suggested that alternatively the jury

> could find in both of these cases that [Ebong] owed a duty of care
> to a guest in his house to render aid in a timely manner and that
> perhaps he didn't render aid in a timely manner.
>
>    . . . .

---

[5] The instruction provided that the jury could find Ebong guilty of involuntary manslaughter if the Commonwealth sufficiently proved:

> (1) That the defendant killed [the deceased]; and
>
> (2) That the defendant owed [the deceased] a legal duty; and
>
> (3) That the death . . . was the direct result of the defendant's
>     failure to perform the legal duty owed to [the deceased]; and
>
> (4) That the defendant's failure to perform the duty constituted
>     negligence so gross, wanton, and culpable as to show a callous
>     disregard for human life.

> [I]f you think it's reasonable that [Ebong] realized they had overdosed earlier and did not render aid in a timely manner, it is possible that you could convict him of involuntary manslaughter.

After deliberations, the jury found Ebong guilty of rape through incapacity, object sexual penetration, and two counts of involuntary manslaughter in violation of Code §§ 18.2-36, -61, and -67.2. He was sentenced to two life terms and twenty years of incarceration.

Ebong made a motion to set aside the verdicts. He argued the evidence was insufficient to support the involuntary manslaughter convictions because the Commonwealth failed to prove that he distributed drugs to either of the deceased women. The court denied the motion.

ANALYSIS

Ebong raises two issues on appeal. He contends that the trial court erred by granting the Commonwealth's motion for joinder. Ebong also challenges the sufficiency of the evidence supporting the convictions.

I. Joinder

The trial court's interpretation of the joinder rule itself "presents a question of law that we review de novo." *Cousett v. Commonwealth*, 71 Va. App. 49, 57 (2019). The question, however, of whether an accused can be tried jointly on more than one pending charge is a decision within the sound discretion of the trial court. *Walker v. Commonwealth*, 289 Va. 410, 415 (2015); *Brooks v. Commonwealth*, 73 Va. App. 133, 141 (2021). "The abuse of discretion standard, '"if nothing else, means that the trial judge's ruling will not be reversed simply because an appellate court disagrees. Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."'" *Holloman v. Commonwealth*, 65 Va. App. 147, 158 (2015) (quoting *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest

to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, 302 Va. 84, 94 (2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

"A motion to [join or] sever charges is decided on the evidence 'as it appears before trial,' not on the evidence that ultimately was adduced at trial." *See Brooks*, 73 Va. App. at 143 (quoting *Spence v. Commonwealth*, 12 Va. App. 1040, 1045 (1991)). But "[i]n reviewing a . . . pretrial ruling allowing joinder of offenses for trial, the appellate court is not confined to the contents of the pretrial proffers and may rely on evidence presented at trial to affirm the joinder decision." *Holloman*, 65 Va. App. at 158.

The rules regarding joinder are clear. A trial court may direct that offenses be tried together "if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto." *Id.* at 157-58 (quoting Rule 3A:10(c)). *See generally Brooks*, 73 Va. App. at 145 (noting that "[t]he purpose" of this rule "is to strike a balance between judicial economy and the danger of unfair prejudice" (quoting *Cousett*, 71 Va. App. at 60)). "Offenses may be tried together if" they "are based on 'the same act or transaction,'" they "are based on 'two or more acts or transactions that are connected,' or" they "'constitute parts of a common scheme or plan.'" *Holloman*, 65 Va. App. at 158 (quoting *Cook v. Commonwealth*, 7 Va. App. 225, 228 (1988)); *accord* Rule 3A:6(b).

The Commonwealth alleged in the trial court that the crimes were part of a common scheme. Ebong suggests that the Commonwealth misrepresented its evidence and failed to prove a common scheme. The phrase "'[c]ommon scheme'" is used when crimes share distinctive features that "permit an inference that each individual offense was committed by the same person

- 7 -

or persons as part of a pattern of criminal activity."[6] *Brooks*, 73 Va. App. at 142-43 (quoting *Scott v. Commonwealth*, 274 Va. 636, 645 (2007)).

Here, the Commonwealth presented evidence that Ebong demonstrated a particular predatory pattern with each of the three victims. He met the three women on three separate Saturday nights at bars in Virginia Beach. He brought all three of them back to his apartment and had sex with them. He raped Jennifer through her incapacity and photographed both her and Kelsey, undressed, while they were unconscious. Sheena and Kelsey died from drug overdoses while Jennifer awoke unable to move and feeling like she had been drugged. The Commonwealth alleged that this evidence established Ebong's practice of finding women at bars, drugging them, bringing them home, and sexually assaulting them. Reasonable jurists could conclude, as the trial court did here, that the commonalities of the circumstances shared between the deaths of Sheena and Kelsey and the rape and object sexual penetration of Jennifer while she was in a drugged stupor demonstrated a common scheme. *See Severance v. Commonwealth*, 67 Va. App. 629, 646 (2017) ("[T]he possible range of idiosyncratic features that may establish a 'common scheme' is very broad." (alteration in original) (quoting *Scott*, 274 Va. at 647)), *aff'd*, 295 Va. 564 (2018); *Yellardy v. Commonwealth*, 38 Va. App. 19, 25 (2002) (holding the two robberies were part of a common "scheme or plan to confront and rob single men in the park during lunchtime by threatening them with a rock, and when prosecuted, to assert that the victims confronted him with offers of homosexual sex").

The Commonwealth sought to prove that Ebong gave the women a variety of controlled substances as part of his pattern of criminal activity. Evidence supporting the Commonwealth's theory of the case was Jennifer's testimony about her physical condition, her statement that she

---

[6] In contrast, "[a] common plan is established 'when the constituent offenses occur sequentially or interdependently to advance some common, extrinsic objective.'" *Brooks*, 73 Va. App. at 144 (quoting *Severance*, 67 Va. App. at 646).

had not voluntarily taken any drugs, her testimony that Ebong gave her drinks, and the toxicology analyses of the deceased victims.[7]  In particular, Sheena and Kelsey died with morphine and fentanyl in their systems.  The forensic expert testified that such central nervous system depressants "can render someone . . . in [a] state of stupor," especially when combined in high levels as they were for Sheena and Kelsey.  The description provided by the expert, of unresponsiveness, drowsiness, and dizziness, matched effects described by Jennifer.  In the end, the jury was not persuaded by the evidence that Ebong administered drugs to the victims as to the felony murder principle itself but instead found Ebong guilty of involuntary manslaughter.  Although the Commonwealth ultimately failed to prove that Ebong gave the women the controlled substances, the evidence, along with the other commonalities, nevertheless provided a basis *at the time of the joinder motion* for the court to try the cases together.  *See Brooks*, 73 Va. App. at 143-44 (holding that the GPS evidence "provided a basis for finding a 'common scheme' when the motion to sever was decided" even though "the Commonwealth ultimately failed to prove" its accuracy).

Ebong emphasizes the lack of evidence that he "drugged" the victims without their knowledge.  He suggests that the only way to administer the drugs at issue is by "[s]norting or injecting" them and therefore the record did not support a finding that he dosed unsuspecting victims.  But the medical examiner testified that people sometimes swallow drugs.  Further, we note that the felony of distributing a controlled substance typically involves a willing recipient and does not require proof that the defendant administered the drug to someone involuntarily.  *See* Code § 18.2-248.  A common scheme with distribution of a controlled substance at its core could involve giving drugs to women and sexually assaulting them *after they voluntarily self-*

---

[7] Further, Sheena's fatal drug cocktail included cocaine, and cocaine was found in Ebong's apartment after Kelsey died.

*administered the drugs*.  The Commonwealth was therefore not required to prove that Ebong

administered the drugs to the victims without their consent to establish a common scheme.

For these reasons, the trial court acted within its discretion by granting the

Commonwealth's motion for joinder.[8]

## II.  Sufficiency of the Evidence

Ebong challenges the sufficiency of the evidence supporting his convictions.  He argues

that the Commonwealth failed to prove he gave the victims any drugs.

He assigns error to the trial court's denial of his motion to strike the "evidence . . . as to

the felony homicide indictments."  But Ebong was found not guilty of felony homicide.

Consequently, to the extent he argues that the evidence was insufficient to prove that he was

guilty of felony homicide, "the jury agreed and convicted him of involuntary manslaughter."  *See*

*Lienau v. Commonwealth*, 69 Va. App. 254, 274 (2018), *aff'd upon rehearing en banc*, 69

Va. App. 780 (2019).  Therefore, this "argument has been effectively rendered moot by the

verdict."  *See id.*

As for the convictions of rape and object sexual penetration, contrary to Ebong's

suggestion, the Commonwealth simply was not required to prove that Ebong administered drugs

to Jennifer to establish those offenses.  *See* Code §§ 18.2-61(A)(ii) (rape through incapacity or

helplessness), -67.2(A) (object sexual penetration); *Calokoh v. Commonwealth*, 76 Va. App. 717,

---

[8] We recognize that, as part of its analysis, the trial court held that justice did not require separate trials because the evidence pertaining to the other victims would be admissible at each trial.  Evidence that the accused committed other offenses may be admitted "to demonstrate a common scheme or plan."  *Castillo v. Commonwealth*, 70 Va. App. 394, 415 (2019) (quoting *Quinones v. Commonwealth*, 35 Va. App. 634, 640 (2001)).  "[P]rior bad act evidence" may also be admitted "when relevant to prove a material element or issue of the crime charged."  *Id.* (quoting *Lafon v. Commonwealth*, 17 Va. App. 411, 417 (1993)).  Nevertheless, this issue is not before us because Ebong does not raise it on appeal.  *See* Rule 5A:20.

732-33 (2023); *Conley v. Commonwealth*, 74 Va. App. 658, 676 (2022). Accordingly, Ebong's sufficiency challenges to those convictions necessarily fail.

Turning last to Ebong's claim that the trial court erred by denying his motion to set aside his convictions for involuntary manslaughter, we start by recognizing that Ebong asked the trial court to instruct the jury on this offense as a lesser-included offense of felony homicide. Defense counsel suggested that the evidence supported that instruction because the argument "could be" made that Ebong owed a legal duty to each of the dead women and "contributed to the[ir] death[s]" by failing to "render aid in a timely manner." In accordance with Ebong's request and over the Commonwealth's objection, the trial court instructed the jury that it could find Ebong guilty of involuntary manslaughter if it concluded that he owed the deceased victims a legal duty and his negligent failure to fulfill that duty resulted in their deaths. During closing argument, the defense urged the jury to render not guilty verdicts or, in the alternative, find him guilty of involuntary manslaughter in line with his theory that he did not give drugs to either Sheena or Kelsey but he owed them a duty to render aid.

This procedural history raises the question of whether the approbate-reprobate doctrine applies here. Under this longstanding principle, a party "cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.'" *Commonwealth v. Holman*, 303 Va. 62, 71 (2024) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). "Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong." *Rowe*, 277 Va. at 502 (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)). "The prohibition against approbation and reprobation . . . confines a litigant to the position that []he first adopted." *Holman*, 303 Va. at 71 (quoting *Matthews v. Matthews*, 277 Va. 522, 528 (2009)). "The . . . doctrine applies when the

error the defendant complains of on appeal is 'obviously the result of his own strategy and actions at trial.'" *Id.* at 72 (quoting *Rowe*, 277 Va. at 502).

In the trial court, Ebong advanced the lesser-included offenses of involuntary manslaughter as an alternative to the second-degree felony murder charges against him. Ebong's counsel posited, both to the trial court and to the jury, that he could be convicted of involuntary manslaughter without a finding that he provided Sheena or Kelsey with any controlled substances. We hold that Ebong "cannot now complain" that the trial court and jury erred by accepting his theory. *See Rowe*, 277 Va. at 503; *cf. Manns v. Commonwealth*, 13 Va. App. 677, 679 (1992) (applying the approbate-reprobate doctrine to preclude the appellant's challenge to his misdemeanor conviction after he asked to be convicted "of a misdemeanor rather than the felony"). "[T]he error asserted by [Ebong] is . . . obviously the result of his own strategy and actions at trial." *See Rowe*, 277 Va. at 502. He cannot now raise it as trial court error.

In sum, Ebong's challenge to the sufficiency of the evidence to support his convictions, based on his argument that the Commonwealth failed to prove he gave drugs to the victims, fails. He was not convicted of felony homicide, so that issue is not properly before us. Proof of distribution of a controlled substance was not a required element of either the rape or object sexual penetration offense. Finally, the approbate-reprobate doctrine precludes Ebong from arguing that the evidence was insufficient to support his convictions for involuntary manslaughter because the Commonwealth did not prove that he distributed drugs to Sheena or Kelsey.

CONCLUSION

The court did not abuse its discretion by allowing the offenses to be tried together.

Further, Ebong's arguments that the Commonwealth failed to present evidence sufficient to

support his convictions are unavailing.  Consequently, we affirm the judgment of the trial court.

*Affirmed.*