COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and Decker
Argued at Norfolk, Virginia

**PUBLISHED**

SHAVIS DONTA HOLLOMAN

                                                         OPINION BY
v.       Record No. 1319-14-1                  JUDGE MARLA GRAFF DECKER
                                                         AUGUST 11, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

Charles E. Haden for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Shavis Donta Holloman appeals his convictions for second-degree murder, malicious

wounding, attempted robbery, conspiracy to commit robbery, three counts of use of a firearm in

the commission of a felony, and gang participation.[1]  For the reasons that follow, we affirm the

convictions.

## I.  BACKGROUND

At trial, the Commonwealth presented evidence regarding two events, each involving a

different victim, Thomas Needham and Rhonda Stubbs.  Witnesses testified that the appellant,

known as "S-Dot," was a "five[-]star general" in the Nine-Trey Bloods criminal street gang.

Prosecution witnesses included Detectives John Baer and Ernest Sales of the City of Hampton

Police Department, and Lieutenant R. Whitehead, an assistant watch commander at the Hampton

Roads Regional Jail.  The Commonwealth also presented testimony from Essie

---

[1] The appellant was convicted pursuant to Code §§ 18.2-22, -26, -32, -46.2, -51, -53.1,
and -58.

Hawkins-Whitlock, who was not a member of the gang, as well as Latoya Manning and Stephen Hayes, who were gang members.

The Commonwealth presented evidence that the appellant and some fellow gang members attempted to rob Needham on August 22, 2010. The appellant drove several of his gang affiliates to Needham's apartment intending to rob him. Four of his accomplices went to Needham's door while the appellant waited in the car. They decided not to rob Needham at that time, in part because Needham's children were home. When they returned to the car, the appellant "got upset" and, as the local gang leader, insisted that they complete the robbery. During the encounter that followed, a fellow gang member, Jamel Carney, shot and killed Needham.

The prosecution also presented evidence that the appellant shot Stubbs on September 17, 2010. She was leaving a friend's house with her five-year-old son. The appellant was in the same area, once again accompanied by other members of the gang. While there, the appellant encountered a man with whom he "had a conflict," and the two "exchang[ed] words." When the man insulted the appellant and intentionally turned away, the appellant opened fire on the street.[2] Stubbs, an innocent bystander, was shot. Detective Sales was in the area and saw "the fire coming from the firearms, and [from] the trajectory [he] could see it was coming from where [a] vehicle was located." Sales immediately stopped the car. The appellant was a passenger and was later identified as the shooter.

The jury convicted the appellant of all of the charges. He received a life sentence plus an additional sixty-three years in prison.

---

[2] Detective Sales explained that gang culture does not tolerate disrespect and dictates "some type of retaliation."

II.  ANALYSIS

The appellant argues that the trial court erred by:  (A) not dismissing the case after the prosecutor failed to comply with the terms of his cooperation and immunity agreement with the Commonwealth; (B) trying the charges relating to Needham jointly with those relating to Stubbs; (C) not striking a particular venireman for cause; (D) allowing a "gang notebook" and related testimony into evidence; and (E) denying the appellant's proposed cautionary jury instructions relating to accomplice testimony.

*A.  Cooperation and Immunity Agreement*

The appellant challenges the interpretation of a written agreement that he entered into with the Commonwealth.  He argues that the trial court erred by not dismissing the charges in accordance with the contract because the Commonwealth violated its terms.

The cooperation and immunity agreement was prepared by the Commonwealth.  The first two sentences state:

> The Hampton Commonwealth Attorney's Office agrees not to prosecute you for any violation of the criminal laws of the Commonwealth of Virginia based on statements provided pursuant to this agreement for which truthful disclosure is made and the occurrence of which the Attorney for the Commonwealth has full and complete knowledge.  This use immunity applies [to] any conversations with the Hampton Police or the Hampton Commonwealth's Attorney's office with respect to knowledge that you have regarding criminal activity.

The document also states that "[t]he information that you provide to the Attorney for the Commonwealth during your cooperation will not be used against you, except as otherwise provided by this agreement."  The appellant and his attorney signed the agreement.

The appellant filed a motion to dismiss the charges against him in accordance with the cooperation and immunity agreement.  He argued that the agreement stated that the Commonwealth was not going to prosecute him based on statements that he provided pursuant to

the agreement. The Commonwealth responded that the appellant was indicted based on other evidence, not the statements that he made in exchange for the agreement.

The trial court concluded that the agreement was limited to "use immunity" and denied the motion to dismiss. The court also ruled that none of the appellant's statements made as a result of the agreement would be admissible at trial, except for impeachment purposes if the appellant testified.

"On appellate review, the trial court's interpretation of the agreement is a matter of law subject to *de novo* review, while a clearly erroneous standard of review is applied to the trial court's factual findings." Hood v. Commonwealth, 269 Va. 176, 181, 608 S.E.2d 913, 916 (2005). Cooperation and immunity agreements "are contractual in nature and, thus, are subject to principles of contract law." Lampkins v. Commonwealth, 44 Va. App. 709, 722, 607 S.E.2d 722, 728 (2005). Further, the reviewing court must interpret the contract as a whole. E.g., Schuiling v. Harris, 286 Va. 187, 193, 747 S.E.2d 833, 836 (2013).

In Gosling v. Commonwealth, 14 Va. App. 158, 164, 415 S.E.2d 870, 873 (1992), this Court described three categories of immunity from prosecution. "Use immunity protects the witness only from 'the use of the specific testimony compelled from him under the grant of immunity,' but not from evidence obtained as a result of such testimony." Id. (quoting Kastigar v. United States, 406 U.S. 441, 450 (1972)). In contrast, "transactional immunity accords complete immunity from prosecution to the witness for the offense related to compelled testimony." Id. A third type of immunity, "[d]erivative use immunity[,] prohibits use against the witness of evidence even indirectly obtained from his testimony." Id.

In this case, the first sentence of the agreement specifically states that the Commonwealth will not prosecute the defendant "based on statements provided pursuant to this agreement." The second sentence of the agreement refers to "[t]his use immunity." Under the

principle that the contract is construed as a whole, the agreement expressly provided the appellant with use immunity, not transactional or derivative use immunity. The use immunity provided the appellant protection only from the Commonwealth using the specific statements he made in exchange for the agreement.[3] The prosecutor averred that the indictments were not based on those statements. The appellant did not dispute that assertion, nor does he contend that those statements were admitted at trial. Consequently, the cooperation and immunity agreement did not require the trial court to dismiss the charges against the appellant.

### B. Joinder

The appellant argues that the trial court erred by denying his motion for separate trials. The Commonwealth contends, as one basis for affirmance, that joinder was proper because to prove participation in a gang it had to demonstrate two or more predicate criminal acts, at least one of which was an act of violence.

Rule 3A:10(c) states that "[t]he court may direct that an accused be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto." Subject to these rules, "[t]he determination as to joinder rests within the sound discretion of the trial court . . . ." Brown v. Commonwealth, 37 Va. App. 507, 514, 559 S.E.2d 415, 419 (2002); see also Walker v. Commonwealth, __ Va. __, __, 770 S.E.2d 197, 199 (2015). The abuse of discretion standard, "'if nothing else, means that the trial judge's ruling will not be reversed simply because an appellate court disagrees. Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Tynes v.

---

[3] The appellant correctly characterizes the agreement as inartfully drawn. However, the rule that "an ambiguous contract is to be construed against the drafter" is applied only where other rules of construction do not resolve the question of intent and the "evidence is in equipoise." Robinson-Huntley v. George Wash. Carver Mut. Homes Ass'n, 287 Va. 425, 431 n.*, 756 S.E.2d 415, 419 n.* (2014).

Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (citation omitted) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)).

Where, as here, the defendant did not consent to having his charges tried together, this Court must evaluate whether the requirements of Rule 3A:6(b) were satisfied. "This rule provides the 'trial court [with] limited discretion to order an accused to be tried for more than one offense at the same time.'" Purvis v. Commonwealth, 31 Va. App. 298, 304, 522 S.E.2d 898, 901 (2000) (alteration in original) (quoting Godwin v. Commonwealth, 6 Va. App. 118, 121, 367 S.E.2d 520, 521 (1988)). Offenses may be tried together "if (1) the offenses are based on 'the same act or transaction,' (2) the offenses are based on 'two or more acts or transactions that are connected,' or (3) the offenses 'constitute parts of a common scheme or plan.'" Cook v. Commonwealth, 7 Va. App. 225, 228, 372 S.E.2d 780, 782 (1988) (quoting Rule 3A:6(b)). In reviewing a trial court's pretrial ruling allowing joinder of offenses for trial, the appellate court is not confined to the contents of the pretrial proffers and may rely on evidence presented at trial to affirm the joinder decision. Allen v. Commonwealth, 58 Va. App. 618, 620-21, 712 S.E.2d 748, 749 (2011) (also holding that an appellate court may not rely on evidence presented at trial to *reverse* a pretrial joinder ruling unless the defendant renewed his objection to joinder at the conclusion of trial).

The Commonwealth argues that the offenses were "connected" under Rule 3A:6(b) due to the statutory elements of the offense of gang participation. Specifically, it points to the requirement that the prosecution show that the members of the gang have committed at least two

predicate criminal acts.[4]  See Code §§ 18.2-46.1, -46.2.  Generally, a "connection" between multiple offenses is sufficient for joinder to exist where they are "'so intimately connected and blended with the main facts adduced in evidence[] that they cannot be departed from with propriety.'"  Spence v. Commonwealth, 12 Va. App. 1040, 1044, 407 S.E.2d 916, 918 (1991) (quoting Kirkpatrick v. Commonwealth, 211 Va. 269, 273, 176 S.E.2d 802, 806 (1970)).  However, the General Assembly has, in certain circumstances, implicitly modified this interpretation of the "connection" requirement under Rule 3A:6(b).  Commonwealth v. Smith, 263 Va. 13, 18, 557 S.E.2d 223, 226 (2002).

In Smith, the Supreme Court of Virginia considered whether it was appropriate for the circuit court to jointly try four murders perpetrated by the defendant.  Id. at 15, 557 S.E.2d at 224.  In that case, the Supreme Court did not address the Commonwealth's argument that the murders were connected and shared a common scheme or plan because they were committed as part of a gang feud.  Id. at 16-17, 557 S.E.2d at 225.  Instead, the Court evaluated whether the "gradation" structure within the capital murder statute provided the necessary connection.  Id. at 17, 557 S.E.2d at 226.  The Court explained that "an aggravating circumstance, which is often a gradation or nexus crime, is required to elevate the offense from . . . first-degree murder to

---

[4] We recognize that the prosecution did not make this argument below and that the trial court ruled that the cases could be joined based on a common scheme or plan.  "'An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.'"  Debroux v. Commonwealth, 32 Va. App. 364, 371-72, 528 S.E.2d 151, 155 (quoting Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992)), adopted upon reh'g en banc 34 Va. App. 72, 537 S.E.2d 630 (2000).  The Supreme Court of Virginia has explained that "'[f]ailure to make the argument before the trial court is not the proper focus of the right result for the wrong reason doctrine.'"  Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010) (quoting Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010)).  Instead, "'[c]onsideration of the facts in the record and whether additional factual presentation is necessary to resolve the newly-advanced reason is the proper focus of the application of the doctrine.'"  Id. (quoting Perry, 280 Va. at 580, 701 S.E.2d at 436).  No additional facts are necessary for this Court's decision.  Consequently, the record provides an adequate foundation for the Court to decide the issue on this basis.

capital murder." Id. at 18, 557 S.E.2d at 226. It concluded that the General Assembly had, through the statutory gradation structure, "implicitly modified" the Court's previous interpretation of "connected crimes" under Rule 3A:6(b). Id.; see also Code § 8.01-3(D) (providing that the General Assembly has the power to modify Supreme Court rules and that a statute prevails over a rule in the event of a "variance" between the two); Creamer v. Commonwealth, 64 Va. App. 185, 199, 767 S.E.2d 226, 232 (2015) (recognizing that the Supreme Court rules must be read in harmony with the code). The Court held that the statutory gradation structure elevating murder to capital murder where a defendant commits two murders within a three-year period provided the requisite "connection" for joinder under Rule 3A:10(c). Smith, 263 Va. at 18-19, 557 S.E.2d at 226; see also Doss v. Commonwealth, 59 Va. App. 435, 449-50, 719 S.E.2d 358, 365-66 (2012) (applying Smith to hold that the gradation structure of an earlier version of Code § 18.2-248 established the connection necessary to join two drug transactions for trial).

Here, the Commonwealth contends that the offenses involving Needham were connected to those involving Stubbs because they were both predicate crimes necessary for the gang participation charge under Code § 18.2-46.2. That code section provides, in pertinent part:

> Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony.

Code § 18.2-46.2(A). Based on the requirements of this statute, the Commonwealth had the burden of proving that the appellant committed a predicate criminal act *and* that he did so "for the benefit of, at the direction of, or in association" with a "criminal street gang." Id.

A "criminal street gang" is:

> any ongoing organization, association, or group of three or more persons, whether formal or informal, (i) which has as one of its

- 8 -

primary objectives or activities the commission of one or more criminal activities; (ii) which has an identifiable name or identifying sign or symbol; *and* (iii) whose members individually or collectively *have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts,* at least one of which is an act of violence, provided such acts were not part of a common act or transaction.

Code § 18.2-46.1 (emphases added). In order to prove that the Nine-Trey Bloods was a criminal street gang, the Commonwealth was required to present evidence that (1) it had at least three people within the organization, (2) one of its "primary objectives or activities" was committing crimes, (3) it existed as an identifiable gang, and (4) *its members had committed "two or more predicate criminal acts,"* at least one of which was violent. Id. (emphasis added); see also Rushing v. Commonwealth, 284 Va. 270, 277, 726 S.E.2d 333, 337 (2012).

Through Code §§ 18.2-46.1 and -46.2(A), the General Assembly has necessarily modified the "connection" requirement in Rule 3A:6(b). In the context of the connection of predicate crimes to a gang participation charge, the definition of "the words 'connected crimes'" as offenses "'so intimately connected and blended with the main facts adduced in evidence[] that they cannot be departed from with propriety[]' no longer applies." See Smith, 263 Va. at 18-19, 557 S.E.2d at 226 (quoting Kirkpatrick, 211 Va. at 273, 176 S.E.2d at 806). Pursuant to these statutes, a gang participation charge is "connected," for purposes of joinder, with "two or more predicate criminal acts, at least one of which is an act of violence," committed by the gang's members. Code § 18.2-46.1. These predicate criminal acts, for purposes of Code § 18.2-46.1, must not be part of a "common act or transaction" in order to meet the definitional requirement of "criminal street gang." Consequently, we hold that the requirement that the Commonwealth prove two or more predicate criminal acts by the members of the Nine-Trey Bloods provided the connection between the attempted robbery and murder of Needham, the malicious wounding of

- 9 -

Stubbs, and the gang participation offense to satisfy Rules 3A:10(c) and 3A:6(b).[5] Where, as here, one offense is admissible to prove an element of another offense, both offenses are sufficiently connected to satisfy the joinder requirement of Rule 3A:6(b).

Finally, justice does not require that the offenses relating to Needham be tried separately from those relating to Stubbs. The appellant was not unduly prejudiced by allowing the Commonwealth to try the charges together, because evidence of both incidents was admissible to prove an element of the gang participation charge—that the Nine-Trey Bloods was a criminal street gang under Code §§ 18.2-46.1 and -46.2(A). See Smith, 263 Va. at 19, 557 S.E.2d at 226-27 (holding that the prejudice resulting from the joinder of two counts of murder was necessary under the relevant statute); Doss, 59 Va. App. at 451, 719 S.E.2d at 366 (explaining that a joint trial of two drug transactions did not unduly prejudice the defendant because the "evidence of one offense was necessary to prove a second or subsequent offense"). Generally, "'[e]vidence of other offenses is admitted . . . if it tends to prove any relevant element of the offense charged.'" Commonwealth v. Minor, 267 Va. 166, 172, 591 S.E.2d 61, 65 (2004) (quoting Satcher v. Commonwealth, 244 Va. 220, 230, 421 S.E.2d 821, 828 (1992)). If the legitimate probative value of the evidence outweighs its prejudicial effect, it is admitted. Id. Here, as exhibited by the statutory structure, the General Assembly has "determined the precise condition" under which two or more offenses may be joined for prosecution "despite the

---

[5] In light of this conclusion, we do not consider the Commonwealth's argument that the offenses shared a common scheme or plan. See Smith, 263 Va. at 17-19, 557 S.E.2d at 225-26 (analyzing the Commonwealth's "overriding alternative argument" that the capital murder statute supplanted the traditional interpretation of the joinder test). Consequently, we do not address whether the general goal of promoting the gang's interest and twenty-six-day time period were sufficient to meet the "common scheme or plan" requirement of Rule 3A:6(b). See Scott v. Commonwealth, 274 Va. 636, 646, 651 S.E.2d 630, 635 (2007) ("[T]he term 'common plan' describes crimes that are related to one another for the purpose of accomplishing a particular goal."); see also Walker, __ Va. at __, 770 S.E.2d at 199-201 (holding that a thirteen-day period was insufficient to connect four drug transactions under Rule 3A:6(b)).

prejudice that may result thereafter." Smith, 263 Va. at 19, 557 S.E.2d at 227; see id. at 17 n.3, 557 S.E.2d at 225 n.3 (rejecting the defendant's argument that the Commonwealth was required to try the predicate crimes first, separately from the principal offense, because "nothing in the [applicable] statute even suggests such a requirement"). Accordingly, in light of the fact that the offenses were predicate crimes for the gang participation offense, the trial court did not err by denying the motion for separate trials.

## C. Venire

The appellant contends that the trial court erred by not granting his motion to strike a venire member for cause. He confirmed at oral argument that he does not contend that the prospective juror should have been disqualified *per se* as a matter of law. Instead, the appellant argues that the record shows bias based upon the venireman's relationship with two of the Commonwealth's witnesses and his status as a victim of a violent crime. According to the appellant, this alleged bias serves as the basis for why the venireman should have been struck for cause.[6]

During *voir dire*, one of the potential jurors stated that he was a retired Hampton police detective. That prospective juror disclosed that while on duty he had been shot and wounded by a suspect. The venire member further acknowledged that he knew two of the people on the Commonwealth's witness list, a law enforcement officer and a former Assistant Commonwealth's Attorney.

---

[6] Only "'limited categories'" of jurors require "'*per se* disqualification.'" Mayfield v. Commonwealth, 59 Va. App. 839, 846, 722 S.E.2d 689, 693 (2012) (quoting Townsend v. Commonwealth, 270 Va. 325, 331, 619 S.E.2d 71, 74 (2005)). "This includes the *per se* disqualification of certain jurors in order to maintain *public confidence* in the judicial system." Id. Here, the appellant argues only that the prospective juror should have been struck because the record proved bias. See id. at 847, 722 S.E.2d at 693-94 (holding that the defendant's public confidence argument was barred on appeal because, in the trial court, he challenged the juror only on bias grounds).

The same venire member represented that he had not formed an opinion as to the appellant's guilt or innocence and did not have a bias in favor of the Commonwealth. He also indicated that he did not know of any reason why he could not be fair and impartial. When asked if he had ever had a preconception that was wrong, the venireman answered affirmatively. He explained that during investigations, "you have to get past the initial . . . meeting and . . . come to understand . . . regardless of how [someone] come[s] off, . . . you get past . . . the outer appearances."

The appellant moved to strike the prospective juror for cause on the bases of his experience as a Hampton police officer, his relationships with an Assistant Commonwealth's Attorney and law enforcement witnesses, and his own status as a victim of a shooting. The trial court denied the motion, finding that the prospective juror had not given any responses indicating that he could not remain fair and impartial. The venireman was removed from the jury through a peremptory strike.

In the context of this record, we consider the appellant's challenge to the court's refusal to strike the potential juror for cause. "A trial judge has broad discretion and control over how *voir dire* is conducted and the procedure for seating a jury." Brooks v. Commonwealth, 24 Va. App. 523, 529, 484 S.E.2d 127, 129 (1997). It is well settled that the decision to retain a prospective juror "'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'" Lovos-Rivas v. Commonwealth, 58 Va. App. 55, 61, 707 S.E.2d 27, 30 (2011) (quoting Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d 731, 732 (2001)). Such deference is given "because the trial court 'sees and hears the [prospective] juror'" during the *voir dire* process. Weeks v. Commonwealth, 248 Va. 460, 475, 450 S.E.2d 379, 389 (1994) (quoting Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391

(1990)).  The trial judge is in the best position to determine whether, despite past experiences or relationships, the prospective juror is able to remain fair and impartial.

During *voir dire*, if it appears "to the court that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case."  Code § 8.01-358.  A potential juror should be struck for cause if he or she "'has any interest in the cause, or is related to either party, or has expressed or formed any opinion, or is sensible of any bias or prejudice.'"  Mayfield v. Commonwealth, 59 Va. App. 839, 845, 722 S.E.2d 689, 693 (2012) (quoting Townsend v. Commonwealth, 270 Va. 325, 330-31, 619 S.E.2d 71, 74 (2005)).  "Juror impartiality is a question of fact . . . ."  Lovos-Rivas, 58 Va. App. at 61, 707 S.E.2d at 30.

Virginia's appellate courts have considered numerous scenarios in which a venireman has identified relationships, connections, or personal situations that have not been sufficient to overturn a trial court's assessment and decision under the requisite standard of review.  For example, a familial relationship with prosecution witnesses does not show that a prospective juror was biased.  See Mayfield, 59 Va. App. at 848, 722 S.E.2d at 694; cf. George v. Commonwealth, 242 Va. 264, 275-76, 411 S.E.2d 12, 18-19 (1991) (holding on the facts of the case that the trial court did not commit manifest error by refusing to exclude for cause a juror whose son served as a pallbearer at the victim's funeral).  Nor does a venireman's previous experience as a victim of a crime similar to that being tried signify that he or she cannot "sit fairly and impartially in the case."  Webb v. Commonwealth, 11 Va. App. 220, 223, 397 S.E.2d 539, 540 (1990).

In the instant case, despite the prospective juror's personal experiences and personal relationships, he gave no indication of bias in favor of the Commonwealth.  See Wise v. Commonwealth, 230 Va. 322, 325, 337 S.E.2d 715, 717 (1985) (explaining that a social relationship is not a basis for disqualification where the prospective juror's "responses to

- 13 -

questions from the bench negate[d] any danger of bias"); cf. Stewart v. Commonwealth, 245 Va. 222, 235, 427 S.E.2d 394, 403 (1993) (affirming the trial court's retention of a prospective juror who stated that "in most cases she would believe a police officer's testimony when it conflicted with a non-police officer's testimony"). Here, the prospective juror was forthcoming regarding his past experiences and relationships, and he indicated that he had not formed an opinion as to the guilt or innocence of the appellant. He also assured the court that he did not have a bias in favor of the Commonwealth and that he could hear the case fairly and impartially. The appellant's attorney had the opportunity to ask additional questions and did not.

We recognize that there were multiple factors identified by the venireman that could have provided a basis for a factual finding of bias. However, the trial court, which had the ability to see the venireman and hear his responses, concluded that the individual could be impartial. Nothing in this record suggests that the trial court committed manifest error and abused its discretion by declining to strike the juror for cause. See Yeatts v. Commonwealth, 242 Va. 121, 133-34, 410 S.E.2d 254, 262 (1991) (affirming the trial court's refusal to excuse a potential juror for cause where she denied bias in favor of the Commonwealth despite the fact that she was an employee of the county, was the daughter of a retired deputy sheriff, and had a social relationship with two investigators who participated in the investigation of the defendant's case). Consequently, the trial court did not err in refusing to strike the prospective juror for cause.

### D. Admissibility of the Notebook and Related Testimony

The appellant contends that the admission of the "gang notebook" and related expert testimony by Detective Sales violated the rule against hearsay and his right to confront witnesses against him as guaranteed by the Sixth Amendment to the Constitution of the United States.

- 14 -

The prosecution admitted into evidence a notebook allegedly used by the appellant's gang.[7] Latoya Manning, a Nine-Trey Bloods member, without objection, identified the item as "the book of Blood knowledge" for the Nine-Trey. She explained that the book contained the names of the gang's founders and rules for gang members. Manning also testified that she was periodically tested on the contents of the book, although she was not allowed to read it herself.

Detective Baer testified that he found the notebook when investigating Needham's death. The Commonwealth asked him why he thought that it was a gang notebook, and he responded that it contained the aliases of the Nine-Trey Bloods gang members. The appellant objected, and the trial court ruled at that time that the notebook was not admissible.

During Detective Sales' testimony as an expert on gangs, he explained the culture and history of the Bloods gang. Sales testified that Nine-Trey was "under the United Blood Nation." The Commonwealth asked him if he recognized the notebook. The appellant objected on hearsay and Sixth Amendment grounds. The court ruled that even though the notebook was hearsay, the witness could reference it to explain the bases of his opinions. Sales testified that he recognized the notebook. He said that it "symbolize[d] some of the gang ideologies and g[ave] some history of the gang." Sales also explained that he recognized some names of local gang members, including "S-Dot," who was listed as the gang's general.[8] The notebook was not

---

[7] The Commonwealth contends that the notebook was not admitted into evidence. The trial court ruled that the notebook was not admissible during Sales' and Baer's testimony, including when the notebook was marked as Commonwealth's Exhibit 16. However, after the initial discussion about the notebook, the parties again addressed its admissibility later in the trial, and the court overruled the appellant's objection. The list of Commonwealth exhibits references the exhibit as "Admitted." The back of the document is denoted with "Commonwealth exh. 16 7/9/14 W.T." Based on the record before the Court, we must conclude that the notebook was admitted into evidence.

[8] The notebook lists the name "SDott," but not "Holloman," as the "G," which Sales explained meant "general" or "who's in charge."

admitted into evidence during Sales' testimony.  After the Commonwealth presented its last witness, however, the notebook was admitted as an exhibit over the appellant's objection.

Generally, when a party objects to a statement as hearsay, the proponent of the evidence must prove that it is admissible.  See Neal v. Commonwealth, 15 Va. App. 416, 420, 425 S.E.2d 521, 523 (1992).  In this case, the proponent of the evidence was the Commonwealth.  "[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion."  Beck v. Commonwealth, 253 Va. 373, 384-85, 484 S.E.2d 898, 905 (1997); see Henderson v. Commonwealth, 59 Va. App. 641, 649, 722 S.E.2d 275, 279 (2012) (*en banc*), aff'd, 285 Va. 318, 329, 736 S.E.2d 901, 907 (2013). This Court will hold that an abuse of discretion has occurred "'[o]nly when reasonable jurists could not differ.'"  Pope v. Commonwealth, 60 Va. App. 486, 517, 729 S.E.2d 751, 766 (2012) (quoting Thomas, 44 Va. App. at  753, 607 S.E.2d at 743).  However, the admission of "'clearly inadmissible'" evidence constitutes an abuse of discretion.  See Lawrence v. Commonwealth, 279 Va. 490, 496, 689 S.E.2d 748, 751 (2010) (quoting Commonwealth v. Wynn, 277 Va. 92, 97, 671 S.E.2d 137, 139 (2009)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Rule 2:801(c); see also Rule 2:801(a) (providing that a "statement" can be "an oral or written assertion").  The term hearsay encompasses "testimony given by a witness who relates what others have told him or what he has read."  Lawrence, 279 Va. at 497, 689 S.E.2d at 751; see also Bynum v. Commonwealth, 57 Va. App. 487, 491, 704 S.E.2d 131, 133 (2011).  The notebook contained statements made by an out-of-court declarant that the prosecution offered for their truth. Consequently, the notebook, as well as Sales' testimony derived from the notebook, was hearsay.

Generally, "hearsay evidence is inadmissible unless it falls within one of the recognized exceptions" to the rule against hearsay. Robinson v. Commonwealth, 258 Va. 3, 6, 516 S.E.2d 475, 476 (1999); see Godoy v. Commonwealth, 62 Va. App. 113, 119, 742 S.E.2d 407, 410 (2013); see also Rule 2:802. The Commonwealth argued below that the notebook "c[ame] in through Detective Sales, . . . a gang expert." An expert witness may testify, in certain circumstances, to an opinion derived from consideration of inadmissible evidence. See Code § 8.01-401.1; Rule 2:703. The exception that allows an expert witness to give an opinion based upon hearsay, however, applies only in civil cases. Simpson v. Commonwealth, 227 Va. 557, 566, 318 S.E.2d 386, 391 (1984); see Rule 2:703(a). In criminal cases, the rule does not provide an exception for the admission of hearsay used by an expert in formulating an opinion. See Simpson, 227 Va. at 565-66, 318 S.E.2d at 391; Rule 2:703(b) ("In criminal cases, the opinion of an expert is generally admissible if it is based upon facts personally known or observed by the expert, or based upon facts in evidence."); Rule 2:803 (listing the exceptions to the rule against hearsay). The record does not establish an exception to the rule against hearsay for the notebook or the related testimony. Consequently, the notebook and Sales' connected testimony were inadmissible hearsay, and the trial court erred by admitting them into evidence.

We turn next to the appellant's constitutional argument. The Sixth Amendment provides a criminal defendant the right to confront the witnesses "'who bear testimony' against him." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (quoting Crawford v. Washington, 541 U.S. 36, 51 (2004)); see also Sanders v. Commonwealth, 282 Va. 154, 162, 711 S.E.2d 213, 217 (2011). A witness' out-of-court testimonial statement against a defendant is inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Melendez-Diaz, 557 U.S. at 309; Dickens v. Commonwealth, 52 Va. App. 412, 418, 663 S.E.2d 548, 551 (2008).

In order to trigger the protection, the statement must be testimonial. To determine whether a statement is testimonial, "we objectively evaluate the circumstances in which the encounter occur[ed] and the statements and actions of the parties." Michigan v. Bryant, 562 U.S. 344, 359 (2011). In doing so, this Court "look[s] to all of the relevant circumstances." Id. at 369; see also Sanders, 282 Va. at 167, 711 S.E.2d at 219. "Although we will not disturb on appeal decisions regarding the admissibility of evidence absent an abuse of the trial court's discretion, we review *de novo* whether a particular category of proffered evidence is 'testimonial hearsay.'" Caison v. Commonwealth, 52 Va. App. 423, 434, 663 S.E.2d 553, 559 (2008) (citations omitted).

"[A] statement cannot fall within the Confrontation Clause unless its *primary purpose* was testimonial." Ohio v. Clark, 135 S. Ct. 2173, 2180 (2015) (emphasis added). Testimonial statements are the "sort [that] cause the declarant to be a 'witness.'" Davis v. Washington, 547 U.S. 813, 821 (2006). Statements are testimonial when made during a police interrogation and "'the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" Clark, 135 S. Ct. at 2179-80 (quoting Davis, 547 U.S. at 822). Statements made "to individuals who are not law enforcement officers . . . are much less likely to be testimonial than statements to law enforcement officers." Id. at 2181.

Certain documents, like medical reports created for treatment purposes, are nontestimonial. Sanders, 282 Va. at 164-65, 711 S.E.2d at 218; see also Walker v. Commonwealth, 281 Va. 227, 231, 704 S.E.2d 124, 126 (2011) (holding that the introduction of the automobile industry's blue book did not violate the Confrontation Clause because it was not prepared for the purpose of assisting the Commonwealth in convicting the defendant). "This is so because statements made for medical treatment purposes are not made in anticipation of or for use in an investigation or prosecution of a crime." Sanders, 282 Va. at 164, 711 S.E.2d at 218.

Similarly, business records are not testimonial because they are "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." Melendez-Diaz, 557 U.S. at 324.

The gang notebook was used within the criminal organization for purposes of the gang and its members. Manning explained that she had been tested on its contents. The record does not reflect any reason to believe that the notebook was created for the purpose of a criminal investigation or prosecution. Consequently, the notebook was not testimonial and its admission, as well as the testimony about it, did not violate the appellant's Sixth Amendment right to confront witnesses against him.

In light of our conclusion that the admission of the notebook and the related expert testimony violated the evidentiary rule against hearsay, we must determine whether that error was harmless. See Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (requiring harmless error review in *all* cases (citing Code § 8.01-678)). A non-constitutional error, such as this one, is harmless if, "'when all is said and done, . . . the error did not influence the jury, or had but slight effect.'" Ramsey v. Commonwealth, 63 Va. App. 341, 356, 757 S.E.2d 576, 584 (2014) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001)). However, if we "'cannot say, with fair assurance, after pondering all that happened . . . , that the judgment was not substantially swayed by the error, . . . the conviction cannot stand.'" Id. (quoting Clay, 262 Va. at 260, 546 S.E.2d at 731-32). Relevant to this analysis is whether "the evidence admitted in error was merely cumulative of other, undisputed evidence." Ferguson v. Commonwealth, 16 Va. App. 9, 12, 427 S.E.2d 442, 445 (1993). In considering harmless error, we examine the full context of the case under these well-established principles.

The Commonwealth relied on the notebook to the extent that it identified the appellant's alias, "S-Dot" (which appeared as "SDott" in the notebook), as the "general" of the Nine-Trey

Bloods, in support of the gang participation charge. The prosecutor did not argue that the notebook was relevant to the appellant's other charges. The Commonwealth, however, did mention the appellant's status as a five-star general of the gang when asking the jury to impose the maximum sentences. See generally Zektaw v. Commonwealth, 278 Va. 127, 140, 677 S.E.2d 49, 56 (2009) ("[W]hether a defendant's sentencing was affected by an error at trial is a factor in our harmless error analysis.").

The statement in the notebook that "SDott" was a general was cumulative of the specific testimony of Commonwealth's witnesses Manning, Hawkins-Whitlock, and Hayes that the appellant, "S-Dot," was a five-star general and gang leader. The prosecution's case relied heavily on the testimony of those eyewitnesses. Although the appellant attempted to discredit them based on their status as accomplices, the appellant's statements to Detective Baer provided further corroboration. The version of the Needham murder that the appellant related to Baer matched the versions of the other witnesses, except that the appellant contended that he only drove his accomplices to Needham's apartment. The appellant also acknowledged to Detective Baer that on the night Needham was killed, he was with Manning, Hayes, Carney, and Jevrayal Elliot, the appellant's brother. Additionally, the appellant identified all of his companions as members of the Nine-Trey Bloods. Lieutenant Whitehead, the security threat group coordinator at the Hampton Roads Regional Jail, testified, without objection, that the appellant signed a letter acknowledging that he had "been identified as belonging to a security threat group or having affiliation with members of a security group." Whitehead identified the security threat group with which the appellant was associated as the Nine-Trey Bloods.

The notebook also contained information about the history and rules of the Nine-Trey Bloods and, more generally, the national Bloods gang. This evidence was duplicative of

Detective Sales' uncontested testimony.[9]  Sales described the origins of the Bloods gang and explained that Nine-Trey was "under the United Blood Nation."

The evidence presented at trial overwhelmingly identified the appellant as holding a leadership role in the gang.  Three eyewitnesses identified the appellant as the five-star general of the gang.  The appellant himself admitted to Baer that he associated with Nine-Trey Bloods members.  Additionally, he acknowledged to Whitehead that he was "affiliated" with "a security threat group."  In light of the strength of the prosecution's evidence, particularly that which duplicated information in the notebook, we conclude that the error in admitting the notebook and the limited related testimony had no substantial influence on the verdicts.  Consequently, the error was harmless.

### E.  Jury Instructions

The appellant contends that the trial court erred in denying his proposed cautionary jury instructions.  He sought to have the jury instructed on the danger of basing a conviction on uncorroborated testimony of accomplices Hayes, Manning, and Hawkins-Whitlock.  The three proffered instructions provided:

> [Witness' name] has testified that he[/she] was an accomplice in the commission of the crime charged in the indictment.  While you may find your verdict upon his[/her] uncorroborated testimony, you should consider his[/her] testimony with great care and you are cautioned as to the danger of convicting the defendant upon the uncorroborated testimony of an accomplice.  Nevertheless, if you are satisfied from the evidence of the guilt of the defendant beyond a reasonable doubt, the defendant may be convicted upon the uncorroborated evidence of an accomplice.

See Va. Model Jury Instrs.–Crim. No. 3.400 (2014).  The Commonwealth objected to the instructions, arguing that other evidence corroborated the accomplices' testimony.  The appellant

---

[9] Sales explained that he learned this general information about the Nine-Trey Bloods from previous arrests, searches, and a "Blood[s] book[]" called "Two Hundred Deep."

cited Via v. Commonwealth, 288 Va. 114, 762 S.E.2d 88 (2014), in support of the proposed instructions. See id. at 115, 762 S.E.2d at 89 ("[A]ccomplice testimony cannot be corroborated by the testimony of another accomplice."). The trial court held that Via was not controlling and rejected the instructions.

It is well established that the decision to grant or deny proffered jury instructions is within the broad discretion afforded the trial court. Sarafin v. Commonwealth, 288 Va. 320, 325, 764 S.E.2d 71, 74 (2014). "'The purpose of any jury instruction is to inform the jury of the law guiding their deliberations and verdict.'" Morgan v. Commonwealth, 50 Va. App. 120, 132, 646 S.E.2d 899, 905 (2007) (quoting Keen v. Commonwealth, 24 Va. App. 795, 807, 485 S.E.2d 659, 665 (1997)). The burden is on the proponent of the instruction "to satisfy the trial court that the proposed language is a correct statement of the law, applicable to the facts of the case on trial, and expressed in appropriate language." Shaikh v. Johnson, 276 Va. 537, 546, 666 S.E.2d 325, 329 (2008).

This Court's "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). When considering whether a trial court abused its discretion by denying a defendant's proffered instruction, "we view the facts relevant to the determination of that issue in the light most favorable to [the defendant]." Commonwealth v. Cary, 271 Va. 87, 90-91, 623 S.E.2d 906, 907 (2006).

Although a jury may convict a defendant based solely on accomplice testimony, a trial court must "warn the jury against the danger of convicting upon such uncorroborated testimony." Dillard v. Commonwealth, 216 Va. 820, 821, 224 S.E.2d 137, 138-39 (1976). However, "where accomplice testimony is corroborated, it is not error to refuse a cautionary instruction." Id. at

- 22 -

821, 224 S.E.2d at 139. "The corroborative evidence, standing alone, need not be sufficient either to support a conviction or to establish all the essential elements of an offense." Id. at 823, 224 S.E.2d at 140. A cautionary instruction may be refused where other evidence corroborates "'material facts which tend to connect the accused with the crime.'" Smith v. Commonwealth, 218 Va. 455, 457, 237 S.E.2d 776, 777 (1977) (quoting Dillard, 216 Va. at 823, 224 S.E.2d at 140).

Based on the state of the law, we address whether sufficient non-accomplice evidence corroborated the accomplice testimony for the charged offenses. If it did, the trial court did not abuse its discretion by refusing the respective cautionary instructions.

Turning first to the offenses connected to Needham, the appellant's own statements, which were admitted through the testimony of Baer, linked him to the shooting. That testimony provided that the appellant's version of events matched the descriptions of Manning and Hayes, except that the appellant did not admit that he ordered the robbery. Therefore, the accomplice testimony regarding the Needham-related offenses was corroborated by non-accomplice evidence.

Regarding the malicious wounding of Stubbs, witnesses Hayes and Hawkins-Whitlock testified that the appellant and Elliot fired weapons. Hayes also testified that when the police stopped their car, the appellant placed his .45 caliber gun into Hayes' lap. Detective Sales testified that at the time of the shooting, he happened to be nearby and immediately stopped the car in which the appellant was traveling. He explained that the occupants did not have time to wash their hands. Forensic tests showed gunshot residue on the appellant's right hand and both of Elliot's hands after the shooting. Testing did not reveal gunshot residue on the hands of the other occupants of the vehicle. Sales also testified that when the occupants got out of the car, a .45 caliber weapon fell out of Hayes' lap. Thus, forensic testing and Sales' testimony

corroborated the accounts of Hayes and Hawkins-Whitlock, who testified that the appellant fired a weapon.

Finally, as to the gang participation offense, this same evidence (the appellant's statement, forensic evidence, and testimony of Sales) corroborated the appellant's knowing and willful participation in the Nine-Trey Bloods. Further corroboration was provided by the appellant's acknowledgment to Whitehead that he belonged to or was affiliated with a security threat group, which Whitehead identified as the Nine-Trey Bloods.

The record shows corroborating evidence in addition to the testimony of accomplices regarding each offense. Therefore, the trial court did not abuse its discretion by rejecting the cautionary instructions relating to accomplice testimony.

### III. CONCLUSION

We hold that the cooperation and immunity agreement promised use immunity to the appellant and, therefore, did not preclude the Commonwealth from prosecuting him for offenses related to the statement he made in exchange for the agreement. Further, the court did not abuse its discretion by allowing the offenses to be tried together. The trial court also acted within its discretion by not striking for cause a venire member who gave no indication of bias. The admission of the gang notebook and related testimony into evidence was error, but was harmless. Finally, the trial court did not abuse its discretion by refusing to instruct the jury on the danger of convicting the appellant based upon uncorroborated accomplice testimony because other evidence corroborated that testimony. Consequently, we affirm the appellant's convictions.

Affirmed.