# COURT OF APPEALS OF VIRGINIA

Record No. 0782-25-2

BOBBY GERARD CLARY

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Raphael and White

Opinion Issued June 23, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Steven B. Novey, Judge

(Sante J. Piracci, on brief), for appellant. Appellant submitting on brief.

(Jason S. Miyares,[1] Attorney General; Justin B. Hill, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## CHIEF JUDGE MARLA GRAFF DECKER

Bobby Gerard Clary appeals his convictions for two counts of rape in violation of Code

§ 18.2-61. He argues that the trial court erred in not striking two jurors for cause. For the

following reasons, we affirm the judgment of the trial court.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

Between 2019 and 2022, Clary repeatedly raped his stepdaughter, T.B.[4]  As a result of the rapes, T.B. became pregnant.  T.B.'s mother discovered the pregnancy and suspected Clary was the father because T.B. was not around any other males due to the COVID-19 pandemic.  T.B. confirmed her mother's suspicion when asked.  She gave birth to the child in February 2023.  Police were called to investigate the allegations of sexual abuse, and ultimately a grand jury indicted Clary on two counts of rape.

Clary elected to be tried by a jury.  In preparation for the trial, more than twenty prospective jurors were summoned for voir dire.  The trial court began the voir dire process by asking several preliminary questions.  The venire members were asked about any prejudice they might have against the Commonwealth or Clary and any formed opinions as to Clary's guilt or innocence.  They were also asked about their ability to "give a fair and impartial trial to both the Commonwealth and . . . the accused based solely on the evidence . . . and the law of Virginia" as instructed.  The court further made certain the jurors understood that Clary was presumed innocent, that the Commonwealth bore the burden of proving him guilty beyond a reasonable doubt, and that Clary was not required to present evidence.  All prospective jurors confirmed that they understood these principles.

After the trial court concluded its preliminary voir dire, the Commonwealth questioned the venire about potential biases.  The prosecutor asked if any of the jurors had "been a victim of sexual

---

[3] "[A]ppellate court[s] must 'review the evidence in the light most favorable to the Commonwealth, the prevailing party'" below.  *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)).  In doing so, appellate courts "'discard' the defendant's evidence when it conflicts with the Commonwealth's evidence, 'regard as true all the credible evidence favorable to the Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor."  *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[4] We use the victim's and jurors' initials to protect their privacy.

assault" or had a family member or friend who had been. Six people raised their hands in response and were later questioned by the attorneys about their answers.[5] Two of those jurors were D.E. and D.M., the members at issue.

Juror D.E. explained during individual questioning that his wife had been a victim of sexual abuse between the ages of sixteen and eighteen. The offender was a "friend [of his wife] who was . . . five or six years older." D.E. did not know his wife when the abuse occurred, and she did not reveal it to him until later during their marriage. The abuse was never reported to the police, and the offender was never charged. The Commonwealth's attorney asked if D.E. would "be able to put aside [his] wife's experience . . . and only decide the case based upon the evidence and the law." D.E. answered, "Yes. I would." Defense counsel followed up on this line of questioning, asking D.E. if he was "positive" that he could put his wife's "experience[] aside" and "give [Clary] a fair trial." Again, D.E. replied affirmatively, stating, "I do believe I can, yes, sir." Clary's attorney continued to question D.E. about potential bias and asked if there was any possibility that he would "seek justice" for his wife "through the defendant." D.E. stated, "No, sir," and again confirmed that he could set aside his personal experience and render a fair verdict.

Clary sought to have D.E. struck for cause, arguing that the present matter and D.E.'s wife's experience were too similar. He also expressed concern over the lack of "justice" for D.E.'s wife. In denying Clary's motion to strike D.E., the trial court found that D.E. "never said that he couldn't be fair" and did not "have any hesitation" in expressing his "confiden[ce]" that he could remain impartial.

As for the other juror, D.M., she explained during her individual questioning that she had been sexually abused by a co-worker as an adult. She never reported the incident to police. The

---

[5] A seventh person raised her hand during the trial court's preliminary questions, explaining that she was a victim of a similar crime. The trial court struck her for cause at that time.

Commonwealth's attorney asked D.M. if she "[w]ould . . . be able to put aside" her personal experiences and "decide the case" "on the evidence . . . and the law." D.M. answered both questions affirmatively. The Commonwealth asked if her experience would cause her to be biased as a juror, and she replied, "No." Clary's attorney further questioned D.M. about whether her experience would affect her ability to give his "client a fair trial." While he was asking if she would "want to [try to] make up for past wrongs by . . . convicting [Clary]," D.M. interrupted and unequivocally responded, "[N]o." She then volunteered, without clear reference to either of defense counsel's questions, "Only in part because I accept some responsibility for the situation myself. I did not have to go meet this person but I did."

Clary sought to have D.M. struck for cause, arguing that the fact that she was a victim of a sexual assault by a co-worker created "a reasonable doubt" about "her ability to be a fair juror."[6] The Commonwealth argued that her experience was not similar to the facts of the instant case and she "immediately" asserted her ability to remain "fair and impartial" despite it. The trial court denied Clary's motion to strike D.M.

In addition to D.E. and D.M., Clary made separate motions to strike the four other jurors for cause who indicated they had been "victim[s] of sexual assault" or had a family member or friend who had been. The court granted Clary's motions to strike three of those jurors for cause and later excused a fourth juror for other reasons not challenged on appeal.

Following these for-cause strikes, Clary peremptorily struck D.E., but D.M. was impaneled on the jury. Clary was convicted of two counts of rape and sentenced to life in prison on each count.

---

[6] Clary called juror D.M. by the wrong name in his motion to strike. But the record indicates that he did in fact move to strike D.M.

ANALYSIS

Clary argues that the trial court erred by denying his motions to strike prospective jurors D.E. and D.M. for cause. There is a wealth of law guiding our analysis.

To safeguard the fundamental right of trial by jury, "persons accused of violating criminal laws must be provided with 'an impartial jury drawn from ["]a panel . . . free from exceptions.["]'" *Taylor v. Commonwealth*, 61 Va. App. 13, 22 (2012) (quoting *Breeden v. Commonwealth*, 217 Va. 297, 300 (1976)); *see also* Code § 8.01-358. A juror who "does not stand indifferent in the cause" must be struck from the jury. *Brown v. Commonwealth*, 68 Va. App. 746, 784 (2018) (quoting Code § 8.01-358). If any "reasonable doubt as to a juror's qualifications" exists, that issue "must be resolved in favor of the accused" and result in the exclusion of the juror. *Northcraft v. Commonwealth*, 78 Va. App. 563, 587 (2023) (quoting *Breeden*, 217 Va. at 298). "These principles must be strictly applied" by the courts, so "a prospective juror [who] equivocates about whether he or she has formed a fixed opinion . . . should be stricken by the trial court." *Taylor*, 61 Va. App. at 23.

For a juror's opinion to disqualify that person, however, it must be one of such a "fixed character [that] repels the presumption of innocence in a criminal case" and leads that juror to believe "the accused stands condemned already." *Goodwin v. Commonwealth*, 71 Va. App. 125, 141 (2019) (quoting *Justus v. Commonwealth*, 220 Va. 971, 976 (1980)). Still, if a juror can pass "the test of impartiality" and "lay aside . . . preconceived views and render a verdict based solely on the law and evidence presented at trial," that juror is not disqualified. *Brown*, 68 Va. App. at 784-85 (quoting *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000)).

In light of these principles, a "trial court's refusal to strike a juror for cause will not be disturbed on appeal unless that decision constitutes 'manifest error amounting to an abuse of discretion.'" *Goodwin*, 71 Va. App. at 136 (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App.

- 5 -

55, 61 (2011)); *see generally Commonwealth v. Barney*, 302 Va. 84, 94 (2023) ("This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015))). A "manifest error" occurs when a "prospective juror cannot or will not lay aside his . . . preconceived opinion" and a motion to strike that juror for cause is denied. *Taylor v. Commonwealth*, 67 Va. App. 448, 456 (2017).

The trial court—not the appellate court—has the opportunity to "see[] and hear[]" each prospective juror respond to questions posed during voir dire. *Andrews v. Commonwealth*, 280 Va. 231, 256 (2010). As the trial court listens to responses, it can observe the "'inflections, tone, and tenor of the dialogue, and [the] general demeanor'" of the juror, putting it in the "best position" to make determinations of qualification. *Id.* (quoting *Smith v. Commonwealth*, 219 Va. 455, 464-65 (1978)).

As a result, a "trial court's determination on the subject [of impartiality] is 'entitled to great deference on appeal' unless 'plainly wrong or unsupported by the record.'" *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121, 127 (2014)). Finally, the "question of juror impartiality is one of fact," and in reviewing the trial court's decision, we "consider the juror's 'entire voir dire, not just isolated portions.'" *Northcraft*, 78 Va. App. at 588 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006)).

Taking into account this legal framework, we turn to the two particular jurors at issue.

I. Juror D.E.

Clary argues that Juror D.E. should have been struck for cause due to his wife's relatively recent disclosure to him that she was "sexually abused" as a teenager by an "older family friend." Clary contends that since the person who abused D.E.'s wife was not punished and her experience

was similar to the facts alleged by the Commonwealth here, reasonable doubt existed as to D.E.'s qualifications and impartiality despite his assurances.

To consider the challenge, we look to the entire voir dire. The trial court began the voir dire process by asking questions designed to reveal any possible disqualifications. Specifically, the court asked whether the potential jurors had "prejudice[s]" that would affect their ability to be "fair and impartial," and it made certain that the jurors understood the rights of Clary and the role of the Commonwealth. D.E. responded appropriately to all of the court's questions, giving no indication that he would be "impaired in performing [his] duties" if selected as a juror. *Goodwin*, 71 Va. App. at 136.

During the Commonwealth's additional questioning of the venire, the prosecutor asked if anyone had a "family member or close friend [who had] been a victim of sexual assault," and D.E. indicated that he did. During individual questioning, D.E. volunteered that his wife had been "sexually abused" by an older family friend as a teenager and that he learned of the assault later, after they were married. He further elaborated that the abuse was never reported to law enforcement.

Clary's characterization of D.E.'s personal experience must be viewed in context. D.E. was not a victim himself and instead had a close personal relationship with someone who was. Significantly, after D.E. explained his wife's experience, the prosecutor asked him whether he could put aside his personal feelings and "only decide the case based upon the evidence and the law." D.E. stated that "[y]es, [he] would." When pressed on the matter by defense counsel, given the few similarities between Clary's case and that of D.E.'s wife, he again responded, "I do believe I can [be impartial], yes, sir." He explained that he did not know his wife when the abuse occurred, which he believed would help him set her experience aside when deciding Clary's case.

D.E. was also firm that he would not "seek justice" for his wife "through the defendant." He explained that he could "separate" his wife's experience from Clary's and could remain "fair." His responses to the voir dire questions were unequivocal and did not reflect any bias. In fact, they reflected just the opposite. *Cf. Burton v. Commonwealth*, 85 Va. App. 408, 423 (2025) (discussing how "equivocal answers by jurors who have previously expressed bias are problematic"). In denying Clary's motion to strike D.E. for cause, the trial court noted that D.E. did not need to be "rehabilitated because he never said that he could[ not] be fair." It specifically found that D.E. was "confident" in his answers and responded without "any hesitation." *See Holloman v. Commonwealth*, 65 Va. App. 147, 165 (2015) (stating that the trial court "is in the best position to determine whether, despite past experiences or relationships, the prospective juror is able to remain fair and impartial"). The trial court was in the best position to assess D.E. This Court is not equipped to second guess the trial court's finding that D.E. harbored no bias or "preconceived opinion[s]," and we will not do so. *Taylor*, 67 Va. App. at 455-56.

The record simply does not establish "manifest error" reflecting an abuse of discretion by the trial court with regard to Juror D.E. And we uphold the court's ruling.

## II. Juror D.M.

Clary also contends that Juror D.M. should have been struck for cause because of her own experience being "sexually assaulted." He argues that because her attacker was never punished and D.M. never reported the assault, doubts existed about her ability to decide his case "on the law and the evidence." The record does not support Clary's challenge.

Similar to the situation with D.E., at the start of the voir dire process, D.M. responded appropriately, without equivocation, to the trial court's group questions concerning her ability to be "fair and impartial" and her understanding of Clary's rights and the Commonwealth's role. Having indicated that she was a victim of sexual assault, D.M. underwent further questioning designed to

uncover any potential bias. She discussed the specifics of her abuse, explaining that she was abused by a co-worker in 1986, more than thirty-five years earlier. D.M. said that she did not report the incident because "in those days, it was always the woman's fault." But she agreed that was "not the case" at the time of trial. Given her status as a victim of sexual abuse, the Commonwealth asked whether she "[w]ould . . . be able to put aside" her own experience and "decide the case just on the evidence . . . and the law" without bias. D.M. affirmed that she could, replying "[y]es" and "[c]orrect." *See Brown*, 68 Va. App. at 785-86 (explaining that a juror's "personal experiences" were not disqualifying so long as he "had not formed 'fixed and decided opinion[s]'" about the disputed issue in the case (alteration in original) (quoting *Shifflett v. Commonwealth*, 221 Va. 760, 771 (1981))).

Clary questioned D.M. more thoroughly about her statement that sexual assault "was always the woman's fault" when it happened to her in the 1980s. D.M. explained that if a woman "wasn't a virtuous virgin, then she probably was at fault because she probably enticed the man." Nevertheless, she reiterated that she personally no longer believed that, adding that the world, too, had "come a long way." And when defense counsel asked if she would "want to make up for past wrongs" by convicting Clary, D.M. said "no."

The trial court found that D.M.'s personal experience was substantially different from Clary's case and that she immediately confirmed her ability to remain fair and impartial such that rehabilitation was not required. Again, like with D.E., the trial court was in the best position to assess D.M.'s answers by "weigh[ing] her 'inflections, tone, and tenor of the dialogue, and [her] general demeanor.'" *Andrews*, 280 Va. at 256 (second alteration in original) (quoting *Smith*, 219 Va. at 464-65). The record is devoid of any indication that D.M. had "an opinion of that *fixed character* which repels the presumption of innocence" or that Clary "st[oo]d[] condemned already."

*Burton*, 85 Va. App. at 424 (quoting *Lovos-Rivas*, 58 Va. App. at 61).  D.M. remained steadfast in her belief that she could remain fair and impartial, and the trial court believed her.

We conclude the trial court did not abuse its discretion in denying Clary's motion to strike D.M. for cause.

CONCLUSION

The trial court did not err by refusing to strike Jurors D.E. and D.M. for cause as the record contains no indication that they could not be fair and impartial.  Accordingly, we affirm the trial court's judgment.

*Affirmed.*